## UNITED STATES v. GREENE et al.

### (District Court, E. D. Georgia, S. D. February 24, 1902.)

**1. INDICTMENT—CONSTRUCTION.**

In construing an indictment based on Rev. St. § 5440, for conspiring to defraud the United States, on demurrer, under the liberal rule required by section 1025, which provides that an indictment shall not be deemed insufficient by reason of any defect of form which shall not tend to the prejudice of the defendant, a statement, in the first count, of the general scheme of the conspiracy, its purpose, and the intended manner of its accomplishment, and of the powers of one of the alleged conspirators as an officer of the United States, must be read into every count, whether it describes a conspiracy or an overt act.

**2. CONSPIRACY TO DEFRAUD UNITED STATES—SUFFICIENCY OF INDICTMENT.**

A conspiracy to defraud the United States is punishable under the statute, notwithstanding the fact that the scheme to defraud was originally devised and entered into at a time so remote that a prosecution for acts then done would be barred by limitation, when it was continuous in its operation, and overt acts have been committed thereunder within the period of limitation; and an indictment, which, after reciting the original scheme, charges a conspiracy at a later date to apply it, in pursuance of which overt acts were committed, is not objectionable on the ground of duplicity.

**3. SAME—ELEMENTS OF OFFENSE.**

It is not necessary, in charging a conspiracy to defraud the United States, under Rev. St. § 5440, to aver that it succeeded, but the crime is complete when the conspiracy is shown, and that one or more of the parties have done some act to effect the object of the conspiracy.[1]

**4. SAME—DESCRIPTION OF OFFENSE—OVERT ACTS.**

A count in an indictment for conspiracy to defraud the United States, which charges as an overt act done in pursuance of the conspiracy the knowing and willful presentation and payment of false and fraudulent claims against the United States, is not insufficient because it does not specify the particulars in which such claims were fraudulent; the only purpose of such count being to show that the unlawful agreement was carried into actual operation.

**5. SAME.**

A charge in an indictment that defendants conspired with an engineer officer in charge of government work to defraud the United States by obtaining through such officer contracts by which they were to be paid high prices for inferior work; that large amounts of useless and unnecessary work were to be done and paid for; that such officer was to exercise the powers of his office fraudulently and corruptly in favor of the contractors in such contracts as might be so obtained by the conspirators by approving and accepting the work so fraudulently done,—is supported by averments of overt acts in presenting for payment to such officer a false and fraudulent claim against the United States for work done, pursuant to such conspiracy, and in the approval and payment of such claim by the officer, although it is further averred that such claim and payment were made under a contract antedating the alleged conspiracy, the conspiracy alleged being broader than one for the purpose alone of obtaining a contract and extending to the manner of conducting the work generally, and the obtaining of payment therefor.

**6. SAME—PRESENTING FRAUDULENT CLAIM—SUFFICIENCY OF INDICTMENT.**

An indictment under Rev. St. § 5438, for conspiracy to defraud the government of the United States by obtaining the allowance and payment of a false and fraudulent claim, which charges as the overt act the presentation of such claim, must state the particular facts showing the fraudulent character of the claim, and a general averment in the language of the statute that it was fraudulent is not sufficiently specific.

Indictment for Conspiracy to Defraud the United States.  On demurrer.

See 100 Fed. 941, 108 Fed. 816, and 113 Fed. 688.

Marion Erwin, U. S. Atty., and Samuel B. Adams, Sp. Asst. U. S. Atty.

Walter G. Charlton, Fleming Du Bignon, Thomas B. Felder, and Daniel W. Rountree, for defendants.

SPEER, District Judge.  The indictment in this case is demurred to upon many grounds, and a plenitude of decided cases have been cited in the exhaustive arguments of counsel for and against the demurrer.  The principles of criminal pleading to which these authorities relate are familiar, and it seems serviceable to a satisfactory determination of the questions raised by the demurrer to analyze the indictment in view of the law said to have been violated, and determine whether it is sufficient, in the language of the constitution, to "inform the accused of the nature and cause of the accusa-

---

[1] See Conspiracy, vol. 10, Cent. Dig. § 89; 1898 Dig. § 4 [g]; 1901B Dig. § 13 [b].

tion." If the indictemnt is sufficient for this purpose, the accused, are not prejudiced.

Section 1025, Rev. St., provides:

"No indictment found and presented by a grand jury in any district or circuit or other court of the United States shall be deemed insufficient, nor shall the trial, judgment or other proceeding therein be affected by reason of any defect or imperfection in matter of form only, which shall not tend to the prejudice of the defendant."

The indictment in this case first sets out the scheme of the conspiracy, which it is alleged that the accused afterwards formed. This scheme, as described, consisted generally in the collusive, fraudulent, irregular, or illegal subordination of the power of the engineer officer in charge of the Savannah district to the purpose of the conspirators. That purpose was to secure all of the bidding on the government works here, to exclude all competitors, to so frame the specifications as to leave it at the option of the engineer officer whether he would accept an expensive or a cheap mattress for jetty works or training walls, to compel other bidders not favored to furnish the expensive mattress, to so construe or to so inspect the work of his co-conspirators as to enable them to furnish the cheap and inexpensive mattress and to charge the government all the while for the costly and more valuable mattress, to approve their accounts presented as a result of this fraudulent work so that they might secure pay from the treasury, and, when in funds as a disbursing officer, to pay these accounts himself. In the statement of this scheme we find fully stated the powers of the engineer officer, and this statement of his powers will serve to throw light upon every ground of the indictment. To condense the language used by the pleader:

"As such officer in charge of said Savannah district, he was vested with, sundry powers, duties, and discretion during said period, and, amongst other things, with power in devising and drafting from time to time specifications for contracts for the improvements proposed to be made in said district; in drafting and suggesting forms of advertisements for giving notice to the public that competitive bids would be received by him; in fixing the time such advertisements would be published prior to the opening of bids; in suggesting and causing to be fixed and fixing the time designated in specifications for contracts within which the successful bidder would be required to commence work; in giving out information in regard to such contracts to be let; in receiving proposals for and recommending the awarding of such contracts, and in approving or rejecting the bonds required to be given by such contractors; in superintending the work to be done by such contractors in said district; in approving and accepting or rejecting the work done by such contractors, according as the same was in accordance with the requirements of such contracts or not; in suggesting and approving modifications of such contracts; in approving or rejecting the accounts rendered to him by such contractors for work done or claimed by such contractors to be done by them, according as said accounts should be fair and honest or false and fraudulent; and, when in funds, as a disbursing officer, with power, duty, and discretion in paying such contractors or refusing to pay such contractors the amounts claimed by them to be due for work done according as such claims were honest and fair or false and fraudulent."

It is perhaps difficult to overstate the importance of the averments just quoted in their effect to clear away the difficulties which are presented by the mooted questions now before the court. This state-

ment of the powers of the engineer officer under the liberal rule applicable to criminal pleading made obligatory by the statute of the United States above quoted must be read into every count of this indictment, whether these describe a conspiracy or whether they describe an overt act. From this statement it will be seen that it was in the power of the engineer officer, provided his mind met in illegal conspiracy with the others charged, to do what it is charged that they all did; in short, to control all of the government contracts through a series of years, for the expenditure of appropriations of the public money for the rivers and harbors of this district, to have that work done in a cheap and inexpensive manner, to charge the government a great price for such services, and to divide the excess of illegal gain above the necessary expenditure between the conspirators themselves. It is not deemed essential for the clear expression of the views of the court upon the demurrer to recite all the details of the method by which these results were to be accomplished as described in what may be termed the scheme of the conspiracy. In the narration of the pleader so far as the statement of the alleged scheme, plot, or device, the averments exhibit a degree of circumstantiality perhaps more than necessary to inform the accused of the nature and character of the accusation against them. Indeed, some of the statements of this plot or device may be regarded as surplusage. After his ample statement of the methods intended to be employed by the co-conspirators, he states that they would use some one or more or all of said means and devices aforesaid, "and such other and additional devices as might become necessary for the accomplishment of the general fraudulent design of the scheme hereinbefore set forth." This language, of course, would obviously be not sufficient to apprise the accused of the nature of such additional device as might become necessary. To that they are entitled, and it follows that in submitting proof under the indictment the government will be restricted to material and essential averments of which the accused has received notice from the language of the indictment.

Thus understanding the plot or device ascribed to the persons accused, we next find in the indictment the first charge of conspiracy. There are sundry definitions of conspiracy which are familiar. For the purposes of this case, without stating the usual antithesis, it is a combination of two or more persons by some concerted action to accomplish some criminal or unlawful purpose. Let us consider next what are the particular conspiracies denounced by the laws of the United States, with which these prisoners are charged. They are defined by sections 5440 and 5438, Rev. St. Section 5440 provides:

"If two or more persons conspire, either to commit an offence against the United States, or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, all the parties to such conspiracy shall be liable to a penalty of not less than one thousand dollars and not more than ten thousand dollars, and to imprisonment not more than two years."

Section 5438 provides:

"Every person who makes or causes to be made or presents or causes to be presented, for payment or approval to or by any person or officer in the

civil, military or naval service of the United States, any claim upon or against the United States, or any department or officer thereof, knowing such claim to be false, fictitious or fraudulent, * * * or who enters into any agreement, combination or conspiracy to defraud the government of the United States or any department or officer thereof, by obtaining payment or allowance of any false or fraudulent claim, * * * shall be imprisoned at hard labor for not less than one nor more than five years or fined not less than one thousand dollars nor more than five thousand dollars."

Now, we know from the brief analysis of the indictment the plot and device for the alleged conspiracy. We know the law which denounces it. It will be observed that the statute makes penal a conspiracy to commit any offense against the United States or to defraud the United States in any manner or for any purpose. What is equally important, it makes it penal for the parties accused to do any act to effect the object of the conspiracy. It further makes penal the act of knowingly presenting for payment or approval any false, fictitious, or fraudulent claim, and particularly the act of entering into any agreement or conspiracy to defraud the government of the United States, or any department or officer thereof, by obtaining or aiding to obtain the payment or allowance of any false or fraudulent claim.

Now, we next inquire, what is the particular conspiracy charged upon the accused as a violation of these comprehensive statutes enacted to protect the government and the funds of the people of the United States in its treasury. This is set forth in the last clause of the first count of the indictment. Avoiding the technical verbiage used, it is charged that on the 1st day of January, 1897, all of the alleged conspirators were proceeding with the construction of jetties at Cumberland Sound and training walls at Savannah. This was under two contracts which had been made on the 8th day of October, 1896, obtained by the alleged conspirators for their secret benefit and in the name of the Atlantic Contracting Company, a corporation under the laws of New York, of which Greene and two of the Gaynors had control, "which contracts had been so obtained fraudulently from the United States by means of said fraudulent schemes and devices hereinbefore set forth," and that the parties accused unlawfully, knowingly, and feloniously, and with other persons to the grand jurors unknown, did conspire to defraud the United States of large sums of money by means of applying said fraudulent scheme to the execution and completion of the work secured by the contracts made on the 8th of October, 1896. To obtain the money for this purpose, this count charges that it was conspired a fraudulent account should be rendered to Oberlin M. Carter, as such engineer officer as aforesaid, and generally to carry said fraudulent scheme into execution by the obtaining of contracts of like character which might thereafter be let in said Savannah district by the United States through the said Oberlin M. Carter, as such engineer officer, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the said United States. In support of this count of the indictment, which, as we have seen, comprehends the description of the plot and device of the conspiracy and the conspiracy itself, there are four other counts, numbered 2, 3, 4, and 5. These counts contain averments of overt acts alleged to have been done by the accused in pursuance of

the scheme hereinbefore described. The first of these overt acts charge that Carter and Connolly, on the 17th day of March, 1897, prepared articles of agreement, entered into between Carter in his official capacity and the Atlantic Contracting Company of New York. This agreement purported to modify the contract of the 8th day of October, 1896, for work at the entrance of Cumberland Sound. This contract itself had been mentioned in the first count of the indictment, and the agreement to modify it purports to be signed by Carter, as captain of the engineer corps United States army, and by John F. Gaynor, president, for the Atlantic Contracting Company, and by William T. Gaynor, secretary. The name of Michael A. Connolly appears thereon as a witness. It is also charged that Michael A. Connolly forged the name of said William T. Gaynor to said document. The count further charges that Michael A. Connolly and Oberlin M. Carter prepared another document, purporting to be dated the 18th day of March, 1897, and to be a written consent of Anson M. Bangs and Eugene Hughes to the modified agreement relative to the Cumberland Sound work above described. It further charges that Connolly forged the signatures of Anson M. Bangs and Eugene Hughes to this document; and, further, that Connolly also forged the signatures of James C. Bogart and Henry Smith, whose names appear thereon as witnesses of the signatures of Bangs and Hughes; and that Carter knowingly caused these forged documents to be forwarded to the war department. It is to be carefully observed that the joint action on the part of Connolly and Carter is alleged to have been done "in pursuance of said conspiracy in" the first count of the indictment set forth. A third count of the indictment sets forth another overt act. This was that all of the alleged conspirators caused to be presented for approval to the said Oberlin M. Carter, engineer officer in charge of the Savannah district aforesaid, a certain claim against the United States, all of them well knowing said claim to be fraudulent. The words and figures of the claim are set forth in the indictment, and amount to an account of the Atlantic Contracting Company against the United States engineering department for more than $30,000 for brush mattress and more than $6,000 for fourth-class stone. It is also charged in this count that this was done in pursuance of said conspiracy in the first count of this indictment mentioned. In the fourth count another overt act is described. It is that Carter, as engineer officer in charge of the Savannah district as aforesaid, issued to the said Atlantic Contracting Company a check, signed by him as captain corps of engineers, and drawn on the assistant treasurer of the United States at New York, for the sum of $345,000, for contract work improving Cumberland Sound, Ga., and did deliver the check to John F. Gaynor in payment of the claim of the said Atlantic Contracting Company for the sum of $345,000 for work claimed to have been done by that company in the improving of Cumberland Sound under the contract of October 8, 1896, in the first count of the indictment mentioned. The count further charges that Carter then and there knew this claim to be fraudulent. This, it is also charged, was done in pursuance of the conspiracy set out in the first count. In the fifth count of the indictment there appears the description of another overt

act, which is that Carter, in his official capacity hereinbefore described, issued a check on the assistant treasurer of the United States in New York for the sum of $230,749, for contract work for improving Savannah harbor, Ga. This check was payable to the order of the Atlantic Contracting Company, and the count charges Carter delivered the check to John F. Gaynor in payment of the claim of the Atlantic Contracting Company to this amount. This was for work claimed to have been done by the Atlantic Contracting Company in improving Savannah harbor, Ga., under the contract of October 8, 1896, in the first count of this indictment mentioned. And the count charges that Carter knew this claim to be fraudulent, and also charges that his action was done in pursuance of the conspiracy charged by the first count.

The first count, setting out the general plot and device, and the conspiracy of 1897, with the overt acts herein described in the second, third, fourth, and fifth counts, constitute a separate and distinct feature of the indictment. The first count is attacked by the defendants because it charges a conspiracy in 1891 and another in 1897, and they insist that this makes the count void for duplicity. We are not able to perceive the correctness of this contention. The indictment charges that the fraudulent scheme was first devised, concocted, and put in operation about the year 1891, and has been continuously in process of execution until on or about the 1st day of October in the year 1899. As a result of this scheme, the indictment charges that these parties got control of the contracts for river and harbor improvements in this district; and the conspiracy charged in the first count, as we have seen, is that, having thus fraudulently obtained two contracts, namely, those dated the 8th of October, 1896,—one for the construction of jetties at Cumberland Sound, and the other for the construction of training walls in the harbor of Savannah,—they applied the fraudulent scheme to the execution and completion of the work under those particular contracts to defraud the United States of divers large sums of money But, say the defendants, it was not possible to have made a conspiracy on the 1st day of January, 1897, to the effect that Carter should so fraudulently exercise the power of his office and the discretion vested in him that he could cut off competition in bidding for contracts to be let by the United States, so as to relate to the contracts of October 8, 1896, for on the 1st day of January, 1897, all bids for contracts of October 8, 1896, had been offered. Hence, say they, it was impossible to apply this conspiracy of January 1, 1897, to the contracts of October 8, 1896; nor was it possible on January 1, 1897, that the fraudulent device to the end that work in said district should be let at high and exorbitant cost to the United States, and done at little cost to the contractors, and in a worthless manner, could relate to contracts of 1896; and so they argue with regard to all the other alleged methods of the plot and of the conspiracy. This is, however, by no means a practical or wholesome view of the power of the law over offenders who enter upon that most subtle and dangerous of all crimes,—a continuous conspiracy. It is a crime in which organization, combination, leadership, numbers, the power and effectiveness of astute and trained intelligences can all be directed, as an army by a

commander, against the integrity of government and the welfare of the people. If it be true, as charged in this indictment, that this scheme was formed as early as 1891, and its details were from time to time put in operation, and finally in 1897 that it was made to apply to particular works of the government then in progress, with a view to obtaining fraudulently a share of the sums appropriated for the public welfare, not only would there be no duplicity in the narration of the successive steps, but the final act, even though the statute of limitations had intervened as to other incidents, would remove the bar, and bring the entire scheme and all of its details under the scrutiny of the court, in order to determine from all the facts whether the parties were guilty of the conspiracy which it is charged was renewed or was completed at a date when the penal authority of the law was in full force and effect. It matters not that the specifications of these particular contracts for work at the entrance of Cumberland Sound and on the training walls at Savannah may have been drawn and adopted in 1896, nor that as early as that date, or previously, the secret understanding between Carter and the other alleged conspirators to shut off other bidding, or to advertise for costly work and permit cheap work, or to do any of the other details, had been formed before the statute intervened; yet if, within the period of effective prosecution before the date of the indictment, joint action was taken by the alleged conspirators, or by two of them, in pursuance of the general scheme, eo instanti the tenacious grasp of the law seized upon the parties, and the courts will proceed to lay bare from its inception every incident of the conspiracy. The train may have been long laid, and the public may remain unconscious of the pending catastrophe; but, if the match is applied seasonably to the enforcement of the law, and the explosion follows, society is no longer powerless to redress the consummated crime not less aggravated because long contemplated and prepared for. It is true in this count that there is no allegation that the United States was actually defrauded. Such an averment might have imparted what may be termed moral force to the indictment, but in a legal sense is not essential to the completeness of the crime charged. It is said that there is no sufficient description of the fraudulent purpose of the conspiracy. Can this be true, in view of those pregnant averments to the effect that these parties had conspired to prevent competition, and by this, by unfair inspection, by keeping bidders in ignorance, not only to destroy the opportunities of the government to secure cheaper bids, thus, if the charges are true, perfecting what may be termed a criminal trust in river and harbor improvements, the profits to be paid from the public treasury, and the injuries inflicted on the commerce of the country? These devices are all set out in the first count, which charges that the contracts had been obtained fraudulently by means of the fraudulent scheme set forth. It is not necessary, in charging conspiracy, to aver that it was successful. The crime is complete when the conspiracy is shown; and, after the conspiracy is shown, in the language of the law, "if one or more of the parties do any act to effect the object of the conspiracy, all the parties shall be liable" to the penalty.

It is said, however, that the overt acts charged in the second, third, fourth, and fifth counts are not set out with sufficient fullness to put the accused on notice of the fraudulent character imputed to their claims for labor and material. They contend that the forgery of the names of guarantors and other persons imputed in the indictment to Carter and Connolly is not sufficiently set forth; that the fraudulent character of the claims presented to Carter for approval as engineer officer by all of the conspirators, and approved or paid by him, is too indefinite. This contention might be true if we were trying the accused solely for the presentation of fraudulent claims. It would seem proper on separate indictments for that crime to inform the accused of the nature and character of the falseness or fraud of which they were accused. As far, however, as we have as yet considered this indictment, that is not the character of the crime charged. The crime is conspiracy, by the means set forth, to defraud the government in many ways; and, as we have seen, if any act, whether criminal or unlawful, is done by either of the conspirators to make that conspiracy effectual, the crime is complete. The language of each of these counts charges that forgery was done, or a fraudulent claim was willfully and knowingly presented or paid, in pursuance of the conspiracy. How can it be said that this does not put the accused upon fair notice of the overt act they must meet? The counts charging overt acts and counts charging conspiracy are all to be construed together. It is not true, in my judgment, in an indictment of this character, as contended by the counsel for the accused, that each count must be treated as a complete and separate indictment in itself. On the contrary, if counts, which, considered separately, would not be regarded as complete, are perfected by apt references therein to averments in another or in other counts, so that there is intelligible and definite information conveyed to the accused of the accusation against them, the constitutional requirement as to an indictment is met. In the case of U. S. v. Donau, 11 Blatchf. 168, 25 Fed. Cas. 890 (Judge Benedict), is found a clear and satisfactory construction of the statute (section 5440, Rev. St.) in contemplation of which the foregoing counts are framed. Said the learned judge:

"The offense is the conspiracy. Some act by some one of the conspirators is required to show, not the unlawful agreement, but that the unlawful agreement, while subsisting, became operative. The offense of conspiracy is committed when, to the intention to conspire, is added the actual agreement; and this intent to conspire, coupled with the act of conspiring, completes the offense intended to be created by the statute, notwithstanding the requirement that the prosecution show, by some act of some one of the conspirators that the agreement went into actual operation. If, then, an indictment correctly charges an unlawful combination and agreement as actually made, and, in addition, describes an act by any one of the parties to the unlawful agreement, as an act intended to be relied on to show the agreement in operation, it is sufficient, although upon the face of the indictment it does not appear in what manner the act described would tend to effect the object of the conspiracy. It is sufficient if the act be so described as to apprise the defendant what act is intended to be given in evidence as tending to show that the unlawful agreement was put in operation, without its being made to appear to the court, upon the face of the indictment, that the act mentioned is necessarily calculated to effect the object of the unlawful com-

bination charged. It is not the case of an attempt to commit crime. The crime is committed when the combination is made, and the act of one of the conspirators is not required by the statute to show the intent. That is inferred from the unlawful act of combining to defraud or to commit an offense; but the object of requiring proof of some act in furtherance of the unlawful agreement is to show that the unlawful combination became a living, active combination."

It is true that in the case of U. S. v. Crafton, 4 Dill. 145, 25 Fed. Cas. 681, 682, Judge Dillon uses this language, on which the defendants strongly rely:

"Under the recognized rules of criminal pleading, it is not sufficient to allege generally a conspiracy to defraud; but the nature of the fraud, and, to the required extent, the manner in which or means by which it was to be effected, must be averred."

An examination of that case shows that the contemplated fraud depended entirely upon the passage of a future act of congress to make it effective, and so it was held by the court to be impossible. It is true that the nature of the fraud, and, "to the required extent," the manner in which or means by which it was to be effected, must be averred; but we think that Judge Benedict has afforded an admirable statement of what constitutes the required extent to which an overt act in a conspiracy defined by this clause of the Revised Statutes must be set out.

Reliance in support of the demurrer is also placed on Cruikshank's Case, 92 U. S. 542, 23 L. Ed. 588. In that case the indictment failed to specify any particular right which the conspirators intended to hinder or prevent. This was held too vague and general. It is true, moreover, that, even in the very full statement of the court as to the essentials of an indictment in that case, it does not appear to require more than reasonable particularity of time, place, and circumstances. It is deemed superfluous to multiply precedents upon a topic so familiar. It may, however, be added that the views of Judge Benedict, above quoted, were in substance affirmed by the supreme court of the United States in U. S. v. Britton, 108 U. S. 204, 205, 2 Sup. Ct. 536, 27 L. Ed. 700. There Justice Wood declares:

"The provision of the statute that there must be an act done to effect the object of the conspiracy merely affords a locus pœnitentiæ, so that before the act is done either one or all of the parties can abandon their design, and thus avoid the penalty prescribed by the statute."

A careful examination of the authorities cited by counsel for the accused has afforded nothing inimical to the conclusion that the first five counts of this indictment are sufficient.

In Blitz v. U. S., 153 U. S. 315, 14 Sup. Ct. 924, 38 L. Ed. 725, the prisoner was indicted for voting under the name of another person at an election at which a representative in congress and also state officers were to be elected; but the indictment was held fatally defective, because it failed to show that the accused voted for representative in congress. The accused may have voted for a state officer at that election. The relation of that precedent to the case at bar is, therefore, not discoverable. In the case of Evans v. U. S., 153 U. S. 584, 14 Sup. Ct. 934, 38 L. Ed. 830, Justice Brown,

for the court, uses the following language, which is not regarded as contributory to the strength of the argument for the demurrer in this case. Said the learned justice:

"Every element of the offense being set forth in the earlier part of the count, there was no necessity of repeating it when the particular credit misapplied is described. * * * While the rules of criminal pleading require that the accused shall be fully apprised of the charge made against him, it should, after all, be borne in mind that the object of criminal proceeding is to convict the guilty as well as to shield the innocent, and no impracticable standard of particularity should be set up whereby the government may be entrapped into making allegations which it would be impossible to prove."

In the case of Pettibone v. U. S., 148 U. S. 197, 13 Sup. Ct. 542, 37 L. Ed. 419, we are not surprised to find that the court holds that a person is not sufficiently charged with obstructing or impeding the due administration of justice in a court, unless it appear that he knew or had notice that justice was being administered in such court.

In U. S. v. Hess, 124 U. S. 486, 8 Sup. Ct. 571, 31 L. Ed. 516, where the averment was that, the defendant having devised a scheme to defraud divers other persons to the jurors unknown by use of the mails, and did not state what the scheme was, Justice Field remarked:

"The absence of all particulars of the alleged scheme renders the count as defective as would be an indictment for larceny without stating the property stolen, or its owner, or the party from whose possession it was taken."

These quotations will serve to make plain the general character of the precedents cited by counsel for the accused. Their soundness and controlling character is incontestable, it is true, but their kinship to the issue before the court is many degrees removed.

This brings us to the sixth count of the indictment. In appropriate language it charges that the alleged conspirators hereinbefore mentioned conspired to defraud the United States of large sums of money by means of a fraudulent scheme devised by them with the engineer officer with relation to river and harbor improvements in the Savannah district. The averments are similar to those set out in the first count, and relate in part to future contracts. They further charge that large amounts of unnecessary and useless work should be fraudulently undertaken and done under the contracts by the contractors who are alleged to be co-conspirators with Carter, the engineer officer. The count further charges that Carter, as such engineer officer in charge, would exercise the powers of his office fraudulently and corruptly in favor of the contractors in such contracts as might be so obtained by the alleged conspirators or other persons or corporation for their secret benefit, and that he would falsely and fraudulently exercise the powers, duties, and discretion of his office in the approval and acceptance of the work so fraudulently done, so that the contractors would receive payment for the construction of such works at exorbitant rates for the poorest and cheapest class of material and work. This is an additional and independent charge of conspiracy. It does not depend upon the original scheme set out in the first count of the indictment. It is,

in my judgment, a valid count under section 5440, Rev. St. It sets forth the power of Carter as an engineer officer. It charges a conspiracy to defraud the United States in the several particulars mentioned in the other conspiracy count by the fraudulent exercise of those powers. It charges also that large amounts of unnecessary and useless work would be undertaken for the same purpose. It is objected to this count of the indictment that it charges no overt act, that it does not set out a scheme to secure the contracts and obtain the money, that it is merely a charge that the accused got together and thought out this scheme to lie in wait for the government, that they would then do all the things that they are charged with having conspired to do in 1891. It is said that there is no allegation that any contracts were ever obtained under the conspiracy charged in this count, or any bidding, or any step of any character taken thereunder. It is, however, true that the seventh count of the indictment, which relates back to and includes the sixth count, charges that the conspirators on the 1st day of July, 1897, did knowingly, willfully, and feloniously cause to be presented to Carter for approval and payment a claim against the government of the United States for the sum of $345,000 for labor, material, and supplies so claimed to have been furnished to the United States during the months of December, 1896, January, 1897, February, 1897, March, 1897, April, 1897, May, 1897, and June, 1897, for work of improving Cumberland Sound, Ga., within said Southern district of Georgia, under a prior written contract dated October 8, 1896. This count charges that this was done in pursuance of the conspiracy set forth in the sixth count. The eighth count charges that Carter issued his check for the sum of $345,000 for contract work in Cumberland Sound, and delivered the same to John F. Gaynor. A copy of the check is set out, and this, it is alleged, was done in pursuance of the conspiracy. Now, it is said that this count related wholly to the prior contracts of October 8, 1896, and the contention of counsel for the accused is fortified on this ground by that of his honor Judge Brown. This learned jurist, in passing on the question whether the accused should be removed to Georgia for trial, with regard to this count, used the language following:

"The conspiracy charged in this count relates wholly to future contracts to be let thereafter,—that is, after January 1, 1897,—while the overt acts, stated in counts seven and eight relate wholly to the prior contracts of October 8, 1896. On this additional ground counts six, seven, and eight would seem to be necessarily bad."

But the supreme court has recently held in this case that a decision on removal of indicted persons from one state to another for the purpose of trial is not to be regarded as adjudging the sufficiency of the indictment in law; and therefore, even had Judge Brown pronounced this indictment bad on this point, his opinion, however great the respect to which it is entitled in an advisory sense, must be regarded as an instance of the dictum which judges arguendo occasionally pronounce, and not as authority. Since it is true, as stated by the supreme court, that a decision on such a hearing is not to be regarded

as adjudging the sufficiency of the indictment, it does not conclude the rights either of the government or the accused. To make an opinion a decision, said the supreme court of the United States, "there must have been an application of the judicial mind to the precise question necessary to be determined to fix the rights of the parties, and therefore this court has never held itself bound by any part of an opinion which was not needful to the ascertainment of the question between the parties." Carroll v. Carroll's Lessee, 16 How. 287, 14 L. Ed. 936. It would be otherwise, of course, had the indictment failed to charge an offense against the laws of the United States, or had the court here been without jurisdiction. The expression of Judge Brown, moreover, merely portrays a mental impression, and not a judicial conviction. In their respective criticisms upon the overt acts relating to contracts previous to the date of this count of the indictment it appears that both Judge Brown and the learned counsel for the accused have omitted to observe what seems to be obvious, viz., that the letting of a contract is one thing, and work done under that contract and payments received therefor are other and very different things. The one is the act of a moment. The others may extend over many years. Let us suppose it be true, as stated in this count of the indictment, that a conspiracy was actually formed on the 1st day of January, 1897, to do a great deal of unnecessary work on these improvements. Can it be insisted that this is a conspiracy beyond the reach of the law because the contract for work was long previously made? These contracts, we may judicially presume, were years in completion, and perhaps are not as yet completed, and if it be true that in pursuance of the conspiracy described in the sixth count the presentation of a claim for $345,000 by the accused and the delivery to them of a check to that amount was done in pursuance of such a new conspiracy, the offense of conspiracy would be complete, and the overt act will justify the imposition of the penalty of the law in case of conviction. We have already seen that it is not necessary that it should appear on the face of the indictment in what way the overt act would contribute to effect the object of the conspiracy. That is a matter of evidence to be determined by the jury. The famous case of People v. Mather, 4 Wend. 229, 21 Am. Dec. 122, recounts an attempt to punish an alleged conspiracy for the abduction of William Morgan, an accusation against certain Masons, which caused the formation of the anti-Masonic party in this country, and blasted the political fortunes of several renowned Americans. In that case the supreme court of New York, through the famous William L. Marcy, one of its judges, after stating that in an indictment for conspiracy the offense may be laid in any county in which it can be proved that an overt act was done by one of the conspirators in furtherance of their common design, and citing an English authority to the effect that, where a conspiracy was formed at sea, and an overt act was done in the county of Middlesex, it was held that the venue was properly laid in that county, declared:

"The law considers that wherever they act there they renew, or perhaps, to speak more properly, they continue, their agreement; and this agreement is renewed or continued as to all whenever one of them does an act in furtherance of their common design."

This is sound in principle, and is supported by abundant authority. In the count now before the court the conspiracy alleged was much broader than the act of obtaining any one contract. Taking the indictment in its entirety, it sets out a purpose not only to obtain the contracts, but to dominate and carry on for unlawful gain all of the work contemplated by the government for the improvement of some of the most important harbors and channels on the Atlantic coast. This count presents with sufficient fullness the charge of a distinct conspiracy to this end. Its averments might well have recited the details of the conspiracy with more explicitness, but we conclude (we think, safely) that there is nothing in the sixth, seventh, and eighth counts so defective as matter of pleading as to withdraw them from the liberal protection afforded by section 1025, Rev. St. Indeed, it is impossible to doubt that the accused, so far as they have been indicted in the counts heretofore discussed, are fairly and fully informed as to the nature of the accusation against them.

The ninth and tenth counts present separate charges. They are framed under section 5438, Rev. St. In the ninth the accused, who are the same parties defendant hereinbefore named, are indicted for conspiracy to defraud the government of the United States by obtaining the "allowance" and payment by the United States, through Oberlin M. Carter, engineer officer, of a certain fraudulent claim, which said fraudulent claim was then and there a claim for labor and materials said to have been furnished by the Atlantic Contracting Company under a contract entered into on the 8th day of October, 1896, for the improvement of Cumberland Sound. This amounted to $25,447.95. The overt act charges the presentation of such claim. The tenth contains the same charges with relation to a fraudulent claim for the sum of $230,749.90 for work, labor, and supplies claimed to have been furnished to the United States by the Atlantic Contracting Company for work at the Savannah harbor during the months of December, 1896, January, 1897, February, 1897, March, 1897, April, 1897, May, 1897, June, 1897, and the overt act charged is that this claim was presented to Carter in furtherance of and in accordance with said conspiracy. To both of these counts the defendants demur upon the ground that the fraudulent character of the claim is not sufficiently set forth. These counts are framed under a different statute from that we have been discussing. They do not charge that Carter, as engineer officer, had any authority to approve or allow the payment of such claims. This has been held essential to an indictment framed under this statute. U. S. v. Reichert (C. C.) 32 Fed. 142. It is not charged in either count, save inferentially, that the fraudulent claims referred to have any relation to the conspiracy hereinbefore discussed. The counts fail to disclose the means or details by which the conspiracies charged were to be made effective, and no averment is made which will sufficiently apprise the accused of any facts in view of which the claims in question are denounced as fraudulent. Said the supreme court in Cruikshank's Case, 92 U. S. 558, 23 L. Ed. 588:

"The object of the indictment is: First, to furnish the accused with such description of the charge against him as will enable him to make his defense; second, to inform the court of the facts alleged, so that it may decide

whether they are sufficient in law to support a conviction if one should be had."

In the care with which we have attempted to consider these counts we have consulted precedents of such indictments afforded both by English and American text writers of high repute on criminal pleading. Archb. Pl. & Ev. (10th Ed.) 677, 678; Bish. Cr. Proc. par. 184; Loveland, Forms Fed. Proc. p. 460. In all of these precedents far greater particularity is used than in the ninth and tenth counts of this indictment. In view of these meager and defective recitals and of the well-settled right of the accused to be fairly informed these counts are not regarded as sufficient. It is true that the charge of conspiracy is made in the language of the statute, and the claims presented by the accused are denounced as fraudulent, but the important expressions in the statute, such as "fraudulent," are generic; and said the supreme court of the United States in Cruikshank's Case:

"It is an elementary principle of criminal pleading that, where the definition of the offense, whether it be at common law or by statute, includes generic terms, it is not sufficient that the indictment shall charge the offense in the same generic terms as in the definition, but it must state the specifics; it must descend to particulars." 1 Archb. Cr. Prac. & Pl. p. 291.

Since these counts do not state the particulars of the fraudulent claim, they do not, in my judgment, meet the requirements of the law.

To the ninth and tenth counts, therefore, the demurrer of the accused must be sustained, and to the first eight counts of the indictment it must be overruled.

It may be added that the district attorney offers to supply any insufficiencies of these counts by a bill of particulars setting forth the details of the alleged fraud. Such an offer is addressed to the judicial discretion (Bish. Cr. Proc. p. 644), and we are convinced the safer practice is to set out such facts to show the fraudulent character of the claim in the indictment itself, rather than in a bill of particulars, which is not a part of the record. This offer is therefore declined.