## UNITED STATES v. BURKETT et al.

(District Court, D. Kansas, S. D.   January 14, 1907.)

1. CONSPIRACY—INDICTMENT.

An indictment charging that defendants conspired together to defraud the government of the title to a portion of the public domain, to wit, etc., and in pursuance of the conspiracy performed the overt acts of obtaining and using before the register and receiver of the local land office false and bogus affidavits represented by defendants to be genuine in making proof of a timber culture entry theretofore regularly made on the land by H., since deceased, under an agreement with his widow that they were to succeed by conveyance from her to all the rights of the government secured by virtue of a patent issued by the government based on such proofs, was not defective for uncertainty.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Conspiracy, §§ 79–87, 97.]

2. SAME—DEFRAUDING GOVERNMENT—PUBLIC LANDS—TIMBER CULTURE ENTRY—PROOF—DELAY.

Act Cong. June 14, 1878, § 2, 20 Stat. 113, c. 191, provides that no final certificate shall be given or patents issued for land entered under a timber culture claim until eight years after the date of the entry, and if at the expiration of such time, or at any time within five years thereafter, the entryman or his heirs or legal representatives shall prove the planting and cultivation of the necessary quantity of trees, etc., they shall receive a patent to the land.   Land Department rules 32 and 33 provide for the determination of suspended claims based on homestead and timber culture entries where there has been a substantial compliance with the law in good faith, but there had been a failure to make final proof within the time fixed therefor, resulting from ignorance of the law, mistake, sickness, or other uncontrollable obstacle.   *Held* that, where a timber culture entry was not forfeited by the Land Department for the entryman's failure to make final proof within five years next succeeding the expiration of eight years after the entry, it did not become absolutely void, but was merely suspended, and was therefore sufficient to sustain a prosecution for conspiracy for combining to obtain title to the land by false and fraudulent proof.

3. STATUTES—CONSTRUCTION—EFFECT OF DECISIONS OF LAND OFFICE.

While the Land Decisions of the Interior Department are not binding on the federal courts, yet, when the construction of a doubtful or obscure statute by the department has been uniform, the court will accept such interpretation as the proper one.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Statutes, §§ 296, 297.]

4. CONSPIRACY—INDICTMENT—OVERT ACTS.

In a prosecution for conspiracy, it is not necessary to charge all the overt acts done or necessary to be done to render the object of the conspiracy effective, or to charge that the unlawful conspiracy proceeded to a successful determination as designed; it being sufficient that the conspiracy, unless interrupted, might have accomplished its unlawful purpose.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Conspiracy, §§ 79, 85–89.]

H. J. Bone, U. S. Atty., and J. S. West, Asst. U. S. Atty.
I. E. Lambert, E. D. McKeever, W. S. McClintock, H. C. Sluss, and Osmond & Cole, for defendants.

POLLOCK, District Judge. Defendants presented to and indicted by the grand jury for the offense of criminal conspiracy, under section 5440 of the Revised Statutes [U. S. Comp. St. 1901, p. 3676], demur to the indictment. The matter has been fully presented in oral argument, and submitted on printed briefs by counsel for the respective parties.

The indictment, at some length, but with some lack of clearness and positiveness of statement, charges the defendants with the crime of conspiring together for the purpose of defrauding the government out of the title to a portion of the public domain, to wit, the S. E. ¼ of section 21, township 34, range 36 west, of the Sixth Principal Meridian, Stevens county, this state. And in pursuance of the conspiracy so formed, and in furtherance of its object to have performed the overt acts of obtaining and using before the register and receiver of the local land office false and bogus affidavits, represented by defendants to be genuine, in making proof of a timber culture entry theretofore regularly made on the land by one Byers W. Huey, now deceased, under an arrangement and agreement with his widow that they were to succeed by conveyance from her to all rights of the government secured by virtue of a patent issued by the government based on such proofs.

While it is contended by counsel for defendants the indictment does not clearly so charge, yet from a careful reading and study of its language I am inclined to the opinion the indictment does sufficiently charge defendants, as stated, and I am further of the opinion in so charging it is sufficient to fully apprise defendants of the nature and character of the offense preferred against them to enable them to make a defense thereto, and to plead any verdict and judgment rendered thereon in bar of a future prosecution for the same offense, and therefore it is in law sufficient. United States v. Martin, 4 Cliff. (U. S.) 163, Fed. Cas. No. 15,728; United States v. Nunnemacher, 7 Biss. (U. S.) 121, Fed. Cas. No. 15,902; U. S. v. Goldberg, 7 Biss. (U. S.) 175, Fed. Cas. No. 15,223; In re Wolf (D. C.) 27 Fed. 606.

However, the demurrer raises for decision another question of serious moment. It is this: Conceding the indictment does sufficiently charge defendants with all the essential ingredients of the offense of criminal conspiracy under the section above named, it is contended by counsel for the defendants that the indictment on its face charges such facts as render the object of the conspiracy impossible of accomplishment; that is to say, conceding the charge made against defendants, as stated, to be true, yet it is further contended the indictment on its face in charging the means by which the unlawful confederacy and agreement was to be effected shows the government could not by any possible means have been defrauded out of its title to the land. Therefore it is insisted it fails to charge a punishable offense. This question arises on the face of the indictment, and appears in this way: The indictment charges Byers W. Huey to have applied to the appropriate local land office to make timber culture entry of the land in question in the year 1890. It further charges that defendants conspired to defraud the

150 F.—14

government out of its title to this land, and to have done the overt acts charged against them in furtherance of its accomplishment in the month of September, 1903. Therefore, as more than 13 years had expired from the date of the entry to the formation of the conspiracy and the doing of the overt acts charged against defendants, to wit, the furnishing of false and bogus proofs in support of the entry, that entry was by the provisions of law made by Congress in that respect forfeited, canceled, inoperative, dead, of no effect, and could not be supported by the proofs made by defendants, notwithstanding it may not have been in fact marked canceled on the records of the land office, and the case of Northern Pacific Railway v. De Lacey, 174 U. S. 622, 19 Sup. Ct. 791, 43 L. Ed. 1111, is cited and relied upon in support of this contention. On the other hand, it is the contention of the government that under the law and the rules of procedure promulgated by the General Land Office in pursuance of law the timber culture entry of Huey did not by lapse of time become dead and of no effect, but that until the actual cancellation of the entry on notice it might be supported by the proofs made, and as a result of such proofs, and others, a patent might issue thereon. If it be true, as contended by counsel for defendants, that the timber culture entry of Huey became dead and of no effect at the expiration of 13 years from date of the entry under positive provisions of the law applicable thereto, then it is not shown by the indictment that any such entry was in existence at the time of the making of the conspiracy or the obtaining and using of the false and spurious proofs in question. Therefore, as the entire object of the conspiracy, no matter how immoral and vicious it may have been, must as a matter of law fail of its purpose to defraud the government out of its title to the land in question, it sounds to reason and common sense the charge made against defendants must fall of its own weight, as would the charge of forging a mere nudum pactum, and the demurrer must be sustained. People v. Shall, 9 Cow. (N. Y.) 778.

But is the contention of defendants sound? Was the timber culture entry of Huey, under the statutory provisions relating thereto, dead and of no effect, hence incapable of being supported by the proofs charged to have been made and furnished by defendants to the officers of the local land office? If not, it is clear the government might and may have been defrauded out of its title to the land in question by the conspiracy and acts done by defendants, and, if so, the demurrer must be overruled. The solution of this problem has involved an examination of the provisions of statutory law relating to the timber culture entry of Huey, the rules of practice obtaining in the Land Department of the government promulgated in pursuance of law, and the decisions of courts, of the Secretary of the Interior, and Commissioner of the General Land Office construing the same. The act in force at the time Huey made his application to enter the land in question as a timber culture claim was Act June 14, 1878, 20 Stat. 113, c. 191, which act, by section 2, among other things, provides:

"That no final certificate shall be given, or patent issued, for the land so entered, until the expiration of eight years from the date of such entry; and if, at the expiration of such time, or at any time within five years thereafter, the person making such entry, or, if he or she shall be dead, his or her

heirs or legal representatives, shall prove by two credible witnesses that he or she or they have planted, and, for not less than eight years, have cultivated and protected such quantity and character of trees as aforesaid * * * they shall receive a patent for such tract of land."

Section 5 provides:

"That the Commissioner of the General Land Office is hereby required to prepare and issue such rules and regulations consistent with this act, as shall be necessary and proper to carry its provisions into effect; and that the registers and receivers of the several land offices shall each be entitled to receive two dollars at the time of entry, and a like sum when claim is finally established and the final certificate issued."

Section 6 provides:

"That the fifth section of the act entitled 'An act in addition to an act to punish crimes against the United States, and for other purposes,' approved March 3, 1857, shall extend to all oaths, affirmations, and affidavits required or authorized by this act."

By act of March 3, 1891, c. 561, 26 Stat. 1095 [U. S. Comp. St. 1901, p. 1535], after Huey's entry had attached, the foregoing act of 1878 was repealed, but this act preserved Huey's rights in the land unimpaired to him and the time within which final proofs could be made was preserved as before. This later act was in unimportant matters further modified and amended by Act March 3, 1893, c. 208, 27 Stat. 593 [U. S. Comp. St. 1901, p. 1416], and Act March 4, 1896, c. 40, 29 Stat. 43 [U. S. Comp. St. 1901, p. 1537]. On April 10, 1890, the Commissioner of the General Land Office, in conjunction with the Secretary of the Interior and the Attorney General of the United States, promulgated certain additional regulations by which suspended claims are decided under sections 2450 to 2457, Rev. St. [U. S. Comp. St. 1901, pp. 1518–1526], as amended by act of Congress of February 27, 1877, as follows:

"Rule 32. All homestead and timber culture entries in which the party has shown good faith, and a substantial compliance with the legal requirements of residence and cultivation of the land, in homestead entries, or the required planting, cultivating, and protecting of the timber, in timber culture entries, but in which the party did not, through ignorance of the law, declare his intention to become a citizen of the United States until after he had made his entry, or, in homestead entries, did not from like cause perfect citizenship until after the making of final proof, and in which there is no adverse claim.

"Rule 33. All homestead and timber culture entries in which good faith appears, and a substantial compliance with law, and in which there is no adverse claim, but in which full compliance with law was not effected, or final proof made, within the period prescribed, or residence established on the land, in homestead entries, within the time fixed therefor by statute, or official regulation based thereon, and in which such failure was caused by ignorance of the law, by accident or mistake, by sickness of the party or his family, or by any other obstacle which he could not control."

From a consideration of the above-quoted statutory provisions and rules of the Land Department of the government as construed in the many decisions emanating from the office of the Secretary of the Interior and the Commissioners of the General Land Office, the following rules of decision will be found to appear: (1) Final proofs of timber culture claims could not be made within eight years next succeeding the date of entry. These years were intended to be spent in the preparation and cultivation of the ground and planting trees thereon. (2) Final proofs of compliance with the provision of the law by the claim-

ant, his heirs at law, or his representatives, within the period of five years next succeeding the expiration of the eight year period, was a matter of right. (3) The rights of the claimant or his heirs at law were not absolutely cut off and barred by the expiration of these two periods, aggregating 13 years from the date of the entry, but the lawful claimant under the entry might, on the presentation of proper proofs and a sufficient showing why his proofs were not presented within due time, as provided by the rules above quoted, still be allowed to make final proofs and secure patent to the land on the theory that by his compliance with the provisions of the act as to planting and cultivating trees he had acquired an equitable claim to the land. (4) This equitable claim could not be cut off or canceled after the expiration of the 13 years, except upon notice to him either at the suit of an adverse claimant to the land or by the officers of the Land Department of the government themselves. (5) Under the rules of procedure in force in the Land Department of the government, when no adverse claimant intervened, and the statutory period for making final proofs had expired, the claimant presented to the officers of the local land office his required proofs, together with his showing made, in excuse of his delay in submitting final proofs. If his proofs were deemed sufficient, such proofs and showing were forwarded to the Commissioner of the General Land Office and the sufficiency of his showing in excuse of his delay to make final proofs was presented to and determined by the equitable board under rules promulgated by the Commissioner of the General Land Office in conjunction with the Secretary of the Interior and the Attorney General constituting such equitable board.

In re William Johnson, 4 Land Dec. Dep. Int. 397; Drew v. Comisky, 22 Land Dec. Dep. Int. 174; Southern Pacific R. R. Co. v. Stillman, 14 Land Dec. Dep. Int. 111; McGowan et al. v. Alps Consolidated Mining Co., 23 Land Dec. Dep. Int. 113; In re Morris Collar, 13 Land Dec. Dep. Int. 339; Pattin v. Smith, 21 Land Dec. Dep. Int. 315; Timpson v. Longnecker, 22 Land Dec. Dep. Int. 59; Carter v. Davidson, 24 Land Dec. Dep. Int. 288; Milne v. Thompson, 25 Land Dec. Dep. Int. 501; Wright v. Diggs, 29 Land Dec. Dep. Int. 174. While the above land decisions are not binding upon this court, yet, as said by the Supreme Court in United States v. Healey, 160 U. S. 136, 16 Sup. Ct. 247, 40 L. Ed. 369:

"When the practice in a department in interpreting a statute is uniform, and the meaning of the statute upon examination, is found to be doubtful or obscure, this court will accept the interpretation by the department as the true one."

And, as said by the court in Railroad v. Whitney, 132 U. S. 366, 10 Sup. Ct. 115, 33 L. Ed. 363:

"It is true that the decisions of the Land Department on matters of law are not binding upon this court in any sense. But on questions similar to the one involved in this case they are entitled to great respect at the hands of any court."

In United States v. Moore, 95 U. S. 760, 24 L. Ed. 588, the court says:

"The construction given to a statute by those charged with the duty of executing it is always entitled to the most respectful consideration, and ought not

to be overruled without cogent reasons. * * * The officers concerned are usually able men, and masters of the subject. Not unfrequently they are the draftsmen of the laws they are afterward called upon to interpret."

It has been held, in principle, this court will take judicial notice of the rules of the Land Department of the government promulgated in accordance with lawful authority. Caha v. United States, 152 U. S. 211, 14 Sup. Ct. 513, 38 L. Ed. 415.

As has been seen, this is a prosecution for a criminal conspiracy to defraud the government out of its title to the land in question, and this conspiracy is sufficiently charged. To make out the completed offense it is necessary to charge the doing by one or both of the defendants of some one or more overt act or acts in furtherance of the common unlawful combination or agreement, and, as has been seen, such acts are charged. It is not necessary to charge all the overt acts done or necessary to be done to render the object of the unlawful conspiracy effective, or to charge the unlawful conspiracy proceeded to a successful termination as designed by defendants. It is enough, if, under any circumstances, unless interrupted, the conspiracy might have accomplished its unlawful purpose. As was said in United States v. Cassidy et al. (D. C.) 67 Fed. 698:

"It is not necessary, however, to a verdict of guilty that the jury should find that each and every of the overt acts charged in the indictment was in fact committed; but it is sufficient to show that one or more of the acts was committed, and that it was done in furtherance of the conspiracy."

Again, as said in United States v. Howell (D. C.) 56 Fed. 21:

"Where the evidence shows a continuous agreement or intention to secure such underrate, proof of a single overt act in furtherance of it is sufficient to make out the offense; and proof of separate overt acts will not show more than one offense where the agreement or combination is one and continuous."

Again, it is said in United States v. Greene et al. (D. C.) 115 Fed. 343:

"A count in an indictment for conspiracy to defraud the United States, which charges as an overt act done in pursuance of the conspiracy the knowing and willful presentation and payment of false and fraudulent claims against the United States, is not insufficient, because it does not specify the particulars in which such claims were fraudulent; the only purpose of such count being to show that the unlawful agreement was carried into actual operation."

It has also been held that persons themselves incapable of committing the substantive offense may be guilty of conspiring to commit the offense. United States v. Stevens et al. (D. C.) 44 Fed. 132; Chadwick v. United States, 141 Fed. 225, 72 C. C. A. 343. Therefore I am of the opinion, while it might have been necessary for defendants to have presented to the officers of the Land Department of the government other proofs in addition to those set forth and charged in the indictment in the making of final proofs of compliance with the law by Huey under which he made entry before the widow could secure an interest in the land at the time proofs were submitted by defendants to the local land office, yet, as proofs of the nature set forth and charged in the indictment were required, and as such proofs would tend to support the actual, existing, uncanceled, though suspended, claim of Huey to the

land, I am of the opinion the demurrer will not lie, but must be over-ruled.

I am further of the opinion the case of Northern Pacific Railway v. De Lacey, supra, cited and so strongly relied upon by counsel for the defendant, is not in point, and for this reason: That was a pre-emption claim, and, as said by Mr. Justice Peckham in delivering the opinion of the court in construing the statutes relating to pre-emption claims:

"We thus find that since 1871 all claimants of pre-emption rights lose those rights by operation of law, unless within 30 months after the date prescribed for filing their declaratory notices they made proper proof and payment for the lands claimed. The filing of their declaratory statement, and the record made in pursuance of the filing became without legal value if within the time prescribed by the statute proper proof and payment were not made. Whether such proof and payment were made would be matter of record, and, if they were not so made, the original claim was canceled by operation of law, and required no cancellation on the records of the Land Office to carry the forfeiture into effect. The law forfeited the right and canceled the entry just as effectually as if the fact were evidenced by an entry upon the record. The mere entry would not cause the forfeiture or cancellation. It is the provision of law which makes the forfeiture, and the entries on the record are a mere acknowledgment of the law, and have in and of themselves, if not authorized by the law, no effect. The law does not provide for such a cancellation before it is to take effect. The expiration of time is a most effective cancellation. In such a case as this, where the forfeiture occurs by the expiration of the 30 months within which to make proof and payment, the record shows that the claim has expired, that it no longer exists for any purpose, and therefore it cannot be necessary in order that the law shall have its full operation that an acknowledgment of the fact should be made by an officer of the Land Office. The law is not thus subject to the act or omission to act of that officer."

As has been seen in the case at bar, by the rules promulgated by the Commissioner of the General Land Office in conjunction with the Secretary of the Interior and the Attorney General of the United States, in accordance with authority conferred by the act of 1878, under which Huey made his entry, if final proofs were not made within the period of five years next succeeding the expiration of eight years after the entry was made, the entry was not forfeited and canceled, but merely suspended, and upon proper proofs and showing might ripen into a valid certificate and patent. No such provision is found in the law under which the De Lacey Case, relied upon by counsel for defendants, was ruled.

It follows the demurrer must be overruled. It is so ordered.